UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

GOLDEN BRIDGE LLC, doing business
as GOLDEN BRIDGE FUNDING LLC,

                    Plaintiff,

           -against-

QUEENSWAY BUILDERS LLC; LAST
CHANCE FUNDING INC.; NEW ERA
LUMBER, INC., doing business as NEW
ERA LUMBER INDUSTRIES; NEW
YORK CITY DEPARTMENT OF
FINANCE; ROC FUNDING GROUP;
HFH CAPITAL FUNDING LLC; NEW
YORK CITY ENVIRONMENTAL
CONTROL BOARD; ATTIQUE
REHMAN; JOHN ZURITA; and 2S 2J
CORP.,

                  Defendants.

-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22-CV-3551 (AMD) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Golden Bridge LLC, doing business as Golden Bridge Funding LLC ("Plaintiff"),

initiated this action on June 16, 2022, against Defendants Queensway Builders LLC

("Queensway"); Last Chance Funding Inc.; New Era Lumber, Inc., doing business as

New Era Lumber Industries; New York City Department of Finance; ROC Funding

Group; HFH Capital Funding LLC; New York City Environmental Control Board;

Attique Rehman; John Zurita; and 2S 2J Corp. (Complaint ("Compl."), ECF No. 1.)

Plaintiff seeks to foreclose on mortgages encumbering two properties: 33 Hale Avenue,

Brooklyn, New York 11208 (also known as Block 3916, Lot 3 on the Kings County Tax

Map) (referred to herein as "33 Hale"), and 118-49 Farmers Blvd., Saint Albans, New

York 11412 (also known as Block 12603, Lot 54 on the Queens County Tax Map)

(referred to herein as "118-49 Farmers"), pursuant to the New York Real Property Actions and Proceedings Law ("RPAPL") § 1301 *et seq.* (*Id.* ¶ 1.)[1] Specifically, Plaintiff seeks the foreclosure and sale of the two properties to satisfy Plaintiff's damages, which it alleges consist of $1,775,000 in principal balance owed, plus accrued interest. (Mem. of Law in Supp. of Pl.'s Mot. for Default J. of Foreclosure and Sale ("Pl.'s Mem."), ECF No. 14-2, at 7; Aff. of Amounts Due, ECF No. 14-6, ¶¶ 6–7.)

Currently pending before this Court is Plaintiff's motion for default judgment, which the Honorable Ann M. Donnelly referred to the undersigned magistrate judge for a report and recommendation. (*See* Mot. for Default J., ECF No. 14; Dec. 14, 2022 ECF Order.) For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background[2]

#### A. Loans Secured by Notes and Mortgages

This case arises out of various loans, secured by notes and mortgages taken out by Defendant Queensway between January 14, 2020, and June 4, 2020, related to real properties in New York. On January 14, 2020, Queensway executed a note ("Note 1"), secured by a mortgage ("Mortgage 1"), to repay Bayport Funding LLC ("Bayport") $415,000 plus interest. (Compl., ECF No. 1, ¶ 33.) Mortgage 1 was recorded in Kings

---

[1] Several of the loans Defendant Queensway undertook were related to a property at 144-34 256th Street, Rosedale, New York (also known as Block 13586, Lot 50 on the Queens County Tax Map). (Compl., ECF No. 1, ¶ 37 (Note and Mortgage 3); *id.* ¶ 39 (Note and Mortgage 4); *id.* ¶¶ 43–44 (Note and Mortgage 6); *id.* ¶ 46 (CEMA); *id.* ¶ 47 (ALR 1); *id.* ¶ 50 (ALR 2).) That property was released with the March 2, 2022 Releases, "and is not subject to this foreclosure action." (*Id.* ¶ 51 n.1.)

[2] In light of Defendants' defaults, the following facts are deemed admitted. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (observing that "a party's default is deemed to constitute a concession of all well pleaded allegations of liability").

County, with City Register File Number ("CRFN") 2020000041509. (*Id.*; Ex. D, 415K Mortgage, ECF No. 1-15.) Note 1 and Mortgage 1 were transferred and assigned to Plaintiff on May 12, 2020, and recorded on June 3, 2020. (Compl., ECF No. 1, ¶ 34; Ex. E, Assignments of Mortgage ("AOM") 415K, ECF No. 1-16.) Note 1 and Mortgage 1 relate to the 33 Hale property. (Ex. D, 415K Mortgage, ECF No. 1-15.)

Also on January 14, 2020, Queensway executed another note ("Note 2") to Bayport for $235,000 plus interest, which was secured by another mortgage ("Mortgage 2"). (Compl., ECF No. 1, ¶ 35.) Mortgage 2 was dated January 14, 2020, and was recorded on January 31, 2020, in Kings County, with CRFN 2020000041510. (*Id.*; Ex. F, 235K Mortgage, ECF No. 1-17.) Mortgage 2 was also secured by the 33 Hale property. (Compl., ECF No. 1, ¶ 35.) Note 2 and Mortgage 2 were transferred and assigned to Plaintiff on May 12, 2020, and recorded on June 3, 2020, under CRFN 2020000162366. (*Id.* ¶ 36; Ex. G, AOM 235K, ECF No. 1-18.)

On January 30, 2020, Queensway executed a third note ("Note 3") to repay Bayport $525,000 plus interest. (Compl., ECF No. 1, ¶ 37.) Note 3 was secured by a mortgage ("Mortgage 3") dated January 30, 2020, and recorded on March 4, 2020, in Queens County, with CRFN 2020000083144. (*Id.*; Ex. H, 525K Mortgage, ECF No. 1-19.) Mortgage 3 was secured by a property located at 144-34 256th Street, Rosedale, New York (also known as Block 13586, Lot 50 on the Queens County Tax Map) (referred to herein as "144-34 256th"). (Compl., ECF No. 1, ¶ 37; Ex. H, 525K Mortgage, ECF No. 1-19.) Note 3 and Mortgage 3 were transferred and assigned to Plaintiff on May 12, 2020, and recorded on June 3, 2020, in Queens County, with CRFN 2020000162360. (*Id.* ¶ 38; Ex. I, AOM 525K, ECF No. 1-20.)

Also on January 30, 2020, Queensway executed a fourth note ("Note 4") to repay Bayport $100,000 plus interest. (Compl., ECF No. 1, ¶ 39.) Note 4 was secured by a

3

mortgage ("Mortgage 4") dated January 30, 2020, and was recorded on March 4, 2020, in Queens County, under CRFN 2020000083145. (*Id.*; Ex. J, 100K Mortgage, ECF No. 1-21.)[3] Note 4 and Mortgage 4 were transferred and assigned to Plaintiff on May 12, 2020, and recorded on June 3, 2020, in Queens County, with CRFN 2020000162359. (Compl., ECF No. 1, ¶ 40; Ex. K, AOM 100K, ECF No. 1-22.)[4] Mortgage 4 was secured by the 144-34 256th property. (Ex. J, 100K Mortgage, ECF No. 1-21; Ex. K, AOM 100K, ECF No. 1-22.)

On January 9, 2020, Queensway executed a fifth note ("Note 5") to repay Bayport $644,000 plus interest. (Compl., ECF No. 1, ¶ 41.) Note 5 was secured by a mortgage ("Mortgage 5") dated January 9, 2020, and recorded on February 7, 2020, in Queens County, with CRFN 2020000050569. (*Id.* ¶ 41; Ex. L, 644K Mortgage, ECF No. 1-23.) Mortgage 5 was secured by the 118-49 Farmers property. (Compl., ECF No. 1, ¶ 41; Ex. L, 644K Mortgage, ECF No. 1-23.) Note 5 and Mortgage 5 were transferred and assigned to Plaintiff on May 12, 2020, and recorded on June 3, 2020, in Queens County, with CRFN 20200000162362. (*Id.* ¶ 42; Ex. M, AOM 644K, ECF No. 1-24.)[5]

On May 15, 2020, Queensway executed a Note ("Note 6") to Plaintiff, whereby Queensway agreed to repay Plaintiff $166,000 plus interest. (Compl., ECF No. 1, ¶ 43.) Note 6 was secured by a mortgage ("Mortgage 6") in the amount of $166,000, executed on May 15, 2020, recorded on June 3, 2020, in Kings and Queens Counties, with CRFN

---

[3] Plaintiff's complaint appears to have a few typographical errors, which the Court finds to be harmless scrivener's errors. For example, Plaintiff alleges Mortgage 4 was recorded with CRFN 20200000**0**83145, yet the filed document has CRFN 2020000083145. (Compl., ECF No. 1, ¶ 39; Ex. J, 100K Mortgage, ECF No. 1-21.)

[4] Plaintiff alleges the assignment of Mortgage 4 was recorded with CRFN 20200000**0**162359, yet the filed document has CRFN 2020000162359. (Compl., ECF No. 1, ¶ 40; Ex. K, AOM 100K, ECF No. 1-22.)

[5] Plaintiff alleges the assignment of Mortgage 5 was recorded with CRFN 20200000**0**162362, yet the filed document has CRFN 202000016232. (Compl., ECF No. 1, ¶ 42; Ex. M, AOM 644K, ECF No. 1-24.)

2020000162367. (*Id.* ¶ 43; Ex. N, 166K Mortgage, ECF No. 1-25.) Mortgage 6 was secured by three properties: (1) 118-49 Farmers; (2) 144-34 256th; and (3) 33 Hale. (Compl., ECF No. 1, ¶ 44; Ex. N, 166K Mortgage, ECF No. 1-25.)

**B. Other Financial Agreements Between Golden Bridge and Queensway**

In addition to Note 6 and Mortgage 6, on May 15, 2020, Queensway executed an amended, restated and consolidated secured promissory note ("Consolidated Note") in the amount of $1,840,000 plus interest, payable to Plaintiff. (Compl., ECF No. 1, ¶ 45; Ex. O, Consolidated Note, ECF No. 1-26.) As security for the Consolidated Note, Queensway executed a "Consolidation, Extension and Modification Agreement" ("CEMA"), which consolidated Mortgages 1 through 6 to form a single lien, totaling $1,840,000. (Compl., ECF No. 1, ¶ 46.) The CEMA was recorded in Kings and Queens Counties, with CRFN 2020000162368, and was recorded against all three properties (118-49 Farmers, 144-34 256th, and 33 Hale). (*Id.*; Ex. P, CEMA 1840, ECF No. 1-27.)[6] Also on May 15, 2020, Queensway executed an "Assignment of Leases and Rents" ("ALR 1") in favor of Plaintiff, which was recorded on June 3, 2020, against all three properties (118-49 Farmers, 144-34 256th, and 33 Hale), in Kings and Queens Counties, with CRFN 2020000162374. (Compl., ECF No. 1, ¶ 47; Ex. Q, ALR 1.84MM, ECF No. 1-28.)

On June 4, 2020, Queensway executed a "Building Loan Note" ("BLN") in the amount of $625,000 in favor of Plaintiff. (Compl., ECF No. 1, ¶ 48; Ex. R, BLN - 625K Note, ECF No. 1-29.) As security for the BLN, Queensway also executed a "Building Loan Mortgage" ("BLM") for $625,000, which was recorded in Kings and Queens

---

[6] The complaint indicated that the CEMA was recorded with CRFN 202000162368, yet the filed document has CRFN 2020000162368. (Compl., ECF No. 1, ¶ 46; Ex. P, CEMA 1840, ECF No. 1-27.)

Counties on June 23, 2020, with CRFN 2020000179427. (Compl., ECF No. 1, ¶ 49; Ex. S, 625K BLM, ECF No. 1-30.) The BLM is "subject to and subordinate to Plaintiff's CEMA." (Compl., ECF No. 1, ¶ 49.) Also on June 4, 2020, Queensway executed another "Assignment of Leases and Rents" ("ALR 2") in favor of Plaintiff, against the three properties (118-49 Farmers, 144-34 256th, and 33 Hale), which was recorded on June 23, 2020, in Kings and Queens Counties, with CRFN 2020000179428. (*Id.* ¶ 50; Ex. T, ALR 2, ECF No. 1-31.)

On March 2, 2022, releases were recorded for the property at 144-34 256th, and recorded in Queens County, under CRFNs 2022000093553, 2022000093554, and 2022000093555. (Compl., ECF No. 1, ¶ 51; Ex. U, Releases, ECF No. 1-32.)[7] Plaintiff made clear in the complaint that since "releases were filed, the property known as 144-34 256th Street, Rosedale, New York was released and is not subject to this foreclosure action." (Compl., ECF No. 1, ¶ 51 n.1.) On March 2, 2022, a UCC termination was also filed, with CRFN 2022000093559. (*Id.* ¶ 51; *see also* N.Y.C. Dep't of Finance, Office of the City Register, Automated City Register Info. Sys. ("ACRIS"), Block 13586 Lot 50 in Queens, UCC3 Termination filed on Mar. 3, 2022.)[8]

---

[7] Plaintiff's complaint indicates that the CRFNs were 20220009355**8**, 20220009355**7**, and 202200009355. (Compl., ECF No. 1, ¶ 51.) The CRFNs listed in the releases filed are as follows: 20220000**0**9355**3**, 20220000**0**9355**4**, and 202200009355**5**. (Ex. U, Releases, ECF No. 1-32.)

[8] The Court takes judicial notice of publicly filed documents on ACRIS related to the properties. *See Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 628 (S.D.N.Y. 2022). Plaintiff's complaint alleges the CRFN for the UCC termination was 202200093559, but the UCC termination accessible via ACRIS has CRFN 20220000**0**93559. (Compl., ECF No. 1, ¶ 51; ACRIS, Block 13586 Lot 50 in Queens, UCC3 Termination filed on Mar. 3, 2022.) The complaint references Exhibit U for both the releases and the UCC termination, yet Exhibit U appears to only contain the releases. (*See* Ex. U, Releases, ECF No. 1-32.)

## II. Parties

Plaintiff Golden Bridge is a limited liability company organized under the laws of the State of Delaware, and its members are citizens of Israel. (Compl., ECF No. 1, ¶¶ 2–3.) Plaintiff alleges Defendant Queensway is a necessary party because Queensway:

> (i) was present at the time of the execution and did execute an Amended, Restated, and Consolidated Secured Promissory Note ("Consolidated Note") (as such terms are defined below); (ii) executed, acknowledged and delivered a Consolidation, Extension and Modification Agreement and Amended, Restated and Consolidated Mortgage ("CEMA"), Assignment of Leases and Rents ("ALR 1"), Spreader and Security Agreement; (iii) executed, acknowledged and delivered a Building Loan Note ("BLN") (as such terms are defined below)[;] (iv) executed, acknowledged and delivered a Building Loan Mortgage and Security Agreement ("BLM"), Assignment of Leases and Rents ("ALR 2"), Building Loan Agreement.

(*Id.* ¶ 5.)

The remaining parties in the litigation have, claim to have, or may have an interest in or a lien upon a property at issue in this case, and Plaintiff asserts that any such interest or lien is subject and subordinate to Plaintiff's liens. (*Id.* ¶ 27.) No Defendant has repudiated this claim.

## III. Procedural History

As noted, Plaintiff commenced this action on June 16, 2022. (Compl., ECF No. 1.) On October 11, 2022, the Clerk of Court entered a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, due to Defendants' failure to appear or otherwise defend this action. (Clerk's Entry of Default, ECF No. 13.)[9] Plaintiff then moved for default judgment against Defendants on December 12, 2022. (Mot. for

---

[9] On July 27, 2022, an attorney entered a notice of appearance for Defendant New York City Environmental Control Board. (Notice of Appearance, ECF No. 9.) To date, Defendant New York City Environmental Control Board has not answered, moved, or otherwise responded to the complaint.

Default J., ECF No. 14.) On December 14, 2022, Judge Donnelly referred Plaintiff's

motion to the undersigned magistrate judge for a report and recommendation. (Dec. 14,

2022 ECF Order.)

The Court then scheduled a telephonic default motion hearing for January 31,

2023. (Jan. 6, 2023 ECF Scheduling Order.) The Court also issued the following directive:

> By 1/24/2023, Plaintiff is respectfully directed to demonstrate compliance
> with the requirement that the papers submitted to the Court pursuant to
> Local Civil Rule 55.2(a) and (b) be mailed to the party against whom a
> default judgment is sought at the last known residence of such party (if an
> individual) or the last known business address of such party (if a person
> other than an individual).

(*Id.* (emphasis omitted).) The Court also mailed formal written notice to Defendants at

all available addresses. (*Id.*; Notice to Defs., ECF No. 16.) On January 18, 2023, Plaintiff

submitted additional documentation in support of its motion for default judgment.

(Am. Notice of Mot. for Default J. of Foreclosure and Sale, ECF No. 17.) At the

telephonic hearing, Plaintiff appeared, as well as individual Defendant John Zurita, and

Julio Carmona, President of 2S 2J Corp., calling on behalf of 2S 2J Corp.; there were no

appearances by any other Defendants. (Jan. 31, 2023 ECF Minute Entry and Order.)

For the reasons discussed herein, the Court respectfully recommends granting

Plaintiff's motion for default judgment.

## DISCUSSION

### I. Default Judgment

#### A. Legal Standards

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a

default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The

plaintiff must first obtain an entry of default when a defendant "has failed to plead or

otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of

8

default is entered and on the plaintiff's application, the district court may enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b).[10] A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

---

[10] Having carefully reviewed all of the filings in the case, the Court notes that Plaintiff's motion papers comport with Local Civil Rule 7.1, and that Plaintiff has established procedural compliance with Local Civil Rules 55.1 and 55.2, which govern default judgment motions. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Civil Rule 55.1(a) (*see* Req. for Certificate of Default, ECF No. 11); (2) filed affidavits demonstrating that Defendants have failed to defend the action, and that the pleadings were properly served, in accordance with Local Civil Rule 55.1(b) (*see* Affs. of Service, ECF No. 17-2; Vallely Decl., ECF No. 14-1, ¶ 25); and (3) certified the mailing of the motion papers to Defendants, in accordance with Local Civil Rule 55.2(c). (*See* Am. Notice of Mot. for Default J. of Foreclosure and Sale, ECF No. 17; Aff. of Mailing, ECF No. 17-3 (certifying mailing of (1) Am. Notice of Mot. for Default J. of Foreclosure and Sale (ECF No. 17), (2) the original Notice of Motion (ECF No. 14), (3) the Declaration of Regularity in Support of Default Judgment of Foreclosure and Sale (Vallely Decl., ECF No. 14-1), (4) the Memorandum of Law in Support of Plaintiff's Motion for a Default Judgment of Foreclosure and Sale (ECF No. 14-2), (5) the Proposed Judgment of Foreclosure and Sale (ECF No. 14-3), (6) the Clerk's Certificate of Default (ECF No. 13), and (7) Affidavits of Service of Summons and Complaint (ECF Nos. 8 and 10 and attachments) for all ten Defendants).)

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Phrased another way, "[t]he court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). The "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "detailed affidavits and documentary evidence" (quotation marks omitted)).

## B. Analysis

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96.

"Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

1. *Willfulness*

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness.[11] Here, Plaintiff adequately served Defendants Queensway, 2S 2J Corp., HFH Capital Funding, and New Era Lumber & Trim by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. (*See* Affs. of Service, ECF Nos. 8, 8-1, 8-2, 8-3.) *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1), (h)(1); *see also Allstate Ins. Co. v. New Century Pharmacy, Inc.*, No. 19-CV-5702 (ENV) (VMS), 2021 WL 7830141, at *2, 4 (E.D.N.Y. Aug. 13, 2021) (holding that

---

[11] As noted, individual Defendant John Zurita and Julio Carmona, President of 2S 2J Corp., on behalf of 2S 2J Corp., attended the telephonic default motion hearing on January 31, 2023. (Jan. 31, 2023 ECF Minute Entry and Order.) In addition, as set forth above, all Defendants are alleged to be junior lienholders to Plaintiff. (Compl., ECF No. 1, ¶¶ 6–27.) The Defendants that attended the hearing, and Defendant New York City Environmental Control Board, which entered a notice of appearance in this case on July 27, 2022, have not responded to the complaint or opposed Plaintiff's motion for default judgment. (*See* Notice of Appearance, ECF No. 9.)

professional services corporation was adequately served via the New York Secretary of State). Plaintiff also adequately served Defendants Last Chance Funding, New York City Environmental Control Board, New York City Department of Finance, and ROC Funding Group by delivering the summons and complaint to people authorized to accept service on behalf of each organization, respectively. (*See* Affs. of Service, ECF Nos. 8-4, 8-6, 8-7, 8-8.) Plaintiff adequately served individual Defendant John Zurita by delivering the summons and complaint to a relative, a person of suitable age and discretion at Defendant Zurita's residence. (*See* Aff. of Service, ECF No. 8-5.) Likewise, Plaintiff adequately served individual Defendant Attique Rehman by personal service. (*See* Aff. of Service, ECF No. 10-1.) Defendants failed to respond to the complaint within 21 days of service and to Plaintiff's motion for default judgment, even after receiving notice from both Plaintiff and the Court. (*See* Jan. 6, 2023 ECF Scheduling Order; Notice to Defs., ECF No. 16; Aff. of Mailing of Am. Notice of Mot. and Related Docs., ECF No. 17-3.) In light of Defendants' failure to respond, despite receiving notice at least three times of this proceeding, the Court weighs this factor in favor of default.

2. *Meritorious Defense*

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense[.]" *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

12

3. *Prejudice*

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiff's and the Court's notices, "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason to deny Plaintiff's motion, the Court recommends entering a default judgment.

## II.  Mortgage Foreclosure as to Defendant Queensway

The two properties Plaintiff seeks to foreclose are residential properties. (*See* Ex. U, Releases, ECF No. 1-32, at ECF pp. 2–3 (listing both 33 Hale and 118-49 Farmers as "Property Type: DWELLING ONLY – 2 FAMILY").)[12] The Court also notes that the RPAPL defines "home loans" as loans in which "[t]he borrower is a natural person." RPAPL § 1304(6)(a)(1)(i). Here, as Defendant Queensway is an LLC and not a natural person, the loans are not "home loans" under New York law.

---

[12] The Court notes that in some documents, the 33 Hale property is listed as "Property Type: RESIDENTIAL VACANT LAND." (*See*, *e.g.*, Ex. D, 415K Mortgage, ECF No. 1-15; Ex. F, 235K Mortgage, ECF No. 1-17; Ex. N, 166K Mortgage, ECF No. 1-25; Ex. S, 625K BLM, ECF No. 1-30.) As the most recent document filed lists 33 Hale as a property containing a dwelling, the Court treats the property as "residential real property" within the meaning of RPAPL § 1305(1)(a). (*See* Ex. U, Releases, ECF No. 1-32, at ECF p. 2.)

### A. **Legal Standards**

In New York, "'[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (N.Y. App. Div. 2d Dep't 2015)); *see also* RPAPL § 1302(1)(a) ("Any complaint served in a proceeding initiated on a residential mortgage covering a one to four family dwelling pursuant to this article must contain an affirmative allegation that at the time the proceeding is commenced, the plaintiff: (a) is the owner and holder of the subject mortgage and note . . . .").

"Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC) (SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) (quotation marks and citation omitted). "Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has demonstrated its prima facie case of entitlement to judgment . . . . The burden then shifts to the defendant to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414–15 (E.D.N.Y. 2018) (citing *Fleet Nat'l Bank v. Olasov*, 793 N.Y.S.2d 52, 52–53 (N.Y. App. Div. 2d Dep't 2005)).

New York law also requires certain notices to be sent in foreclosure actions. Specifically, a foreclosing party in an action involving residential real property must provide notice to "any tenant of a dwelling unit" with specific formatting and content requirements. *See* RPAPL §§ 1303, 1305(3) ("[A] successor in interest of residential real

14

property shall provide written notice to all tenants in the same manner as required by [§ 1303(4)] . . . ."). The Court notes that there are other provisions of the RPAPL that require foreclosure notices, yet several of those provisions are only applicable to "home loans." *See* RPAPL §§ 1304(1) (applicable only "with regard to a home loan"), 1304(6)(a)(1)(i) (defining "home loan"); *see also* RPAPL § 1306 (requiring, where § 1304(1) notices are applicable, for such notices to be filed with the superintendent of financial services).

### B.  Analysis

####   1.   *Standing and the* Prima Facie *Case for Mortgage Foreclosure*

Plaintiff was not an original party to Notes and Mortgages 1 through 5, but has alleged (and submitted documentation to support) that these Notes and Mortgages were assigned to Plaintiff, and that all of these assignments occurred before Plaintiff filed the instant action. (*See* ECF Nos. 1-15 through 1-24 (mortgages, mortgage recording documents, and assignments for Mortgages 1–5); Pl.'s Mem., ECF No. 14-2, at 5–6.) *See In re Pinnock,* 594 B.R. 609, 612 (Bankr. S.D.N.Y. 2018) ("Under New York law, 'once a promissory note is transferred from assignor to assignee, the mortgage passes as an incident to the note.'" (quoting *In re Idicula*, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013))). Plaintiff was an original party to Note and Mortgage 6, as well as the Consolidated Note, CEMA,[13] BLN, BLM, ALR 1, and ALR 2. (*See* ECF Nos. 1-25 through 1-31.) Plaintiff has also stated it is in physical possession and is the holder and owner of the Consolidated Note, CEMA, BLN, BLM, ALR 1, and ALR 2, and that the Consolidated Note, CEMA, BLN, and BLM have not been transferred or assigned to another entity. (Compl., ECF No. 1, ¶ 52; Aff. of Amounts Due, ECF No. 14-6, ¶ 4 (noting that "Plaintiff

---

[13] As previously noted, the CEMA consolidated Mortgages 1 through 6 to form a single lien, totaling $1,840,000. (Compl., ECF No. 1, ¶ 46.)

is owner and holder of" the CEMA, BLM, and BLN).) As Plaintiff has sufficiently

pleaded (and no Defendant has opposed its contention) that it is the owner and holder,

and has physical possession of the relevant notes, mortgages, CEMA, BLN, BLM, ALR

1, and ALR 2 (and was the owner and holder at the commencement of this action), the

Court is satisfied that Plaintiff has standing.

Having demonstrated the existence and ownership of the mortgages, the last

step needed for Plaintiff to establish its *prima facie* case is a showing that Defendant

Queensway has defaulted in paying its loans. *Windward Bora LLC*, 2020 WL 4261130, at

\*3. Plaintiff has submitted uncontroverted evidence that Queensway "failed to comply

with the terms and provisions of the CEMA and BLM by failing to pay the installment

balance due" in May of 2021, and that "the default continues to date." (Compl., ECF No.

1, ¶ 53; *see also* Pl.'s Mem., ECF No. 14-2, at 2; Aff. of Amounts Due, ECF No. 14-6.) The

Court finds Plaintiff has met its *prima facie* burden, and Defendants have failed to

oppose Plaintiff's claims or otherwise "raise a triable issue of fact." *Gustavia Home, LLC*,

321 F. Supp. 3d at 414–15.

2. *Pre-Foreclosure Required Procedures*

Plaintiff has submitted documentation that it has delivered a RPAPL § 1303

"Notice on Tenant" for both 33 Hale and 118-49 Farmers, as well as Affidavits of

Vacancies for both properties. (Affs. of Posting, ECF Nos. 8-9 and 8-11 (noting that the

Notices were printed on pink paper, with the title in bold, 20-point type, and the text in

bold, 14-point type); Affs. of Vacancy, ECF Nos. 8-10 and 8-12.) *See* RPAPL §§ 1305(3)

(requiring that "a successor in interest of residential real property" provide notice in

conformity with § 1303(4)), 1303(4) (setting forth procedural requirements for required

foreclosure notices). As previously noted, Defendant Queensway is not a natural

person, and thus the loans are not "home loans" under the RPAPL, and do not require

notices under § 1304. RPAPL § 1304(6)(a)(1)(i). Accordingly, the Court finds that Plaintiff has complied with the notice requirements of the RPAPL.[14]

### III. Findings as to the Remaining Nine Defendants

RPAPL § 1311 identifies the necessary defendants in a mortgage foreclosure action, providing that persons "whose interest is claimed to be subject and subordinate to the plaintiff's lien, shall be made a party defendant to the action," including "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311. "Default judgment is appropriate against such a defendant where the complaint alleges 'nominal liability,' i.e., that any judgments or liens a defendant may have against the property are subject and subordinate to plaintiff's lien." *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Harilal*, No. 19-CV-7034 (CBA) (JRC), 2022 WL 16754569, at *5 (E.D.N.Y. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 4596734 (E.D.N.Y. Sept. 30, 2022).

Plaintiff named nine nominal Defendants in the complaint. Plaintiff states that Last Chance Funding Inc. holds a judgment (Compl., ECF No. 1, ¶ 7); New Era Lumber, Inc., doing business as New Era Lumber Industries, holds judgments and mechanic's liens (*id.* ¶¶ 9–12); the New York City Department of Finance holds a judgment (*id.* ¶ 14); ROC Funding Group holds a judgment (*id.* ¶ 16); HFH Capital Funding LLC holds a judgment (*id.* ¶ 18); the New York City Environmental Control Board holds certain liens/judgments (*id.* ¶ 20); Attique Rehman "is a secured party pursuant to a

---

[14] The Court also notes that Plaintiff asserted "Default notices are expressly waived in the CEMA." (Pl.'s Mem., ECF No. 14-2, at 2; Ex. P, CEMA 1840, ECF No. 1-27, at ECF p. 16 (Consolidated Note), ¶ 4.2 ("Upon the occurrence of an Event of Default: . . . Holder may, at its option, without any written notice given to the Maker (such notice being expressly waived) . . . .").) Regardless of this provision, the Court finds that Plaintiff has demonstrated proper compliance with the relevant statutes regarding mortgage foreclosure in New York.

financing statement recording in the Office of the City Register of the City of New York for the County of Kings" (*id.* ¶ 22); John Zurita holds a mechanic's lien (*id.* ¶ 24); and 2S 2J Corp. holds a mechanic's lien (*id.* ¶ 26). Plaintiff asserts that "[e]ach of the above-named defendants has, or claimed to have or may claim to have, some interest in or lien upon the Property or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to the Lien of Plaintiff's Mortgage." (*Id.* ¶ 27.) As no Defendant has submitted any opposition to Plaintiff's assertions or motion, the Court accepts Plaintiff's allegations as true, and recommends that Plaintiff's motion for default judgment be granted.

## IV. Damages

As noted above, in a default judgment, the Court shall "determine the amount of damages," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan*, 822 F. Supp. 2d at 290. Plaintiff seeks a judgment ordering the foreclosure and sale of the two properties, based upon the following outstanding debts owed to it: (1) $1,150,000 in outstanding principal on the CEMA; (2) $625,000 in outstanding principal on the BLM; (3) $14,791.66 in unpaid interest from April 2, 2021 through May 1, 2021 on the CEMA and BLM; and (4) $648,464.84 in default interest from May 2, 2021 through October 31, 2022, totaling $2,438,256.50. (Aff. of Amounts Due, ECF No. 14-6, ¶¶ 6–11.)[15] Plaintiff does not seek attorney's fees. (Vallely Decl., ECF No. 14-1, ¶ 26.)

---

[15] In Plaintiff's affidavit of amounts due, which was prepared on October 11, 2022, Plaintiff calculated default interest through October 31, 2022. (Aff. of Amounts Due, ECF No. 14-6, ¶ 10.) The Court concludes that Plaintiff should be awarded default interest calculated at the relevant rates for the entire applicable time period, as set forth *infra*.

## A. Principal

Plaintiff asserts that the outstanding principal balance Defendant Queensway owes is $1,775,000. (Pl.'s Mem., ECF No. 14-2, at 7.) Plaintiff also submits an affidavit of amounts due, outlining the outstanding principal balance for (1) the CEMA ($1,150,000) and (2) the BLM ($625,000). (Aff. of Amounts Due, ECF No. 14-6, ¶¶ 6–7.) Plaintiff has provided documentation of the CEMA and the BLM, both of which list Plaintiff as a party to the transactions. (Ex. P, CEMA 1840, ECF No. 1-27; Ex. S, 625K BLM, ECF No. 1-30.) Plaintiff also states that "Queensway has failed to comply with the terms and provisions of the CEMA and BLM by failing to pay the installment balance due" in May of 2021, "and the default continues to date." (Compl., ECF No. 1, ¶ 53.) Accordingly, the Court recommends awarding Plaintiff **$1,775,000** in unpaid principal.

## B. Interest

### 1. *Interest Pursuant to Agreements*

Plaintiff states that, in addition to the principal balance, "Defendant owes interest from April 2, 2021 through May 1, 2021 due under the CEMA and Building Loan Mortgage (hereinafter, collectively 'Loans'), totaling $14,791.66." (Aff. of Amounts Due, ECF No. 14-6, ¶ 8.) Plaintiff calculated this by multiplying the principal balance of the loans ($1,775,000) by 10% (the interest rate), then dividing by 360 days (as set forth in the BLN and the Consolidated Note, which is incorporated into the CEMA), to calculate a *per diem* interest rate of approximately $493.05, which Plaintiff calculated for the 30 days from April 2, 2021, through May 1, 2021, which results in a total of **$14,791.66** for that time period.[16] (*Id.* at 9; *see* Ex. R, BLN - 625K Note, ECF No. 1-29, at

---

[16] Plaintiff appears to have calculated this total as $14,791.66 by maintaining more than two decimal places in the calculations (i.e., principal balance [$1,775,000] x 10% [the interest rate] ÷ 360 days = $493.055555556, and $493.055555556 x 30 days = approximately $14,791.66).

ECF p. 3 (10% interest rate), ECF p. 4 (providing for a 360-day basis for calculating interest); *see also* Ex. P, CEMA 1840, ECF No. 1-27, ECF p. 13 (Ex. C, Consolidated Note and Addendums), ECF p. 15 ("QUEENSWAY . . . promises to pay to the order of GOLDEN BRIDGE . . . the principal sum of [$1,840,000] . . . with interest thereon computed from the date hereof until maturity . . . at the rate equal to [10%] . . . and thereafter at the Default Rate . . . ."), ECF pp. 15–16 ("Interest shall for all purposes hereunder be calculated on the basis of a three hundred sixty (360) day year and charged on the basis of a three hundred sixty-five (365) or three hundred sixty-six (366) day year counting the number of days elapsed.").)

2. *Default Interest*

In addition, the CEMA and BLN set forth default interest rates of 24%.[17] "[I]t is well established that 'contractual provisions providing for an increased interest rate on default are enforceable under New York law.'" *In re S. Side House, LLC*, 451 B.R. 248, 264 (Bankr. E.D.N.Y. 2011), *aff'd sub nom. U.S. Bank Nat. Ass'n v. S. Side House, LLC*, No. 11-CV-4135 (ARR), 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012) (quoting *U.S. Trust Co. of N.Y. v. LTV Steel Co. (In re Chateaugay Corp.)*, 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993), *aff'd*, 170 B.R. 551 (S.D.N.Y. 1994)). Plaintiff's request for default interest was derived by taking the principal balance of the loans ($1,775,000) multiplied by the 24% default interest rate, and dividing the number by 360 days (pursuant to the CEMA and the BLN), to obtain a *per diem* interest rate of $1,183.33. (Aff. of Amounts Due, ECF No. 14-6,

---

[17] *See* Ex. P, CEMA 1840, ECF No. 1-27, at ECF p. 17 (Consolidated Note, stating: "From and after the occurrence of an Event of Default . . . interest shall accrue on the outstanding Principal Sum at a rate equal to twenty-four percent (24%) per annum (the 'Default Rate')"); *see also id.* ("The provisions of CPLR § 5004 [governing New York State statutory interest rate for pre-judgment interest] are hereby waived and deemed inapplicable."); Ex. R, BLN - 625K Note, ECF No. 1-29, at ECF p. 4, ¶ 4.2 ("Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate through and after the entry of a Judgment of Foreclosure and Sale"), ECF p. 5, ¶ 4.4 (setting the Default Rate at 24%).

at ¶ 10; Ex. P, CEMA 1840, ECF No. 1-27, at ECF p. 17 (Consolidated Note, noting 24% default interest rate), ECF pp. 15–16 (setting forth 360-day basis for interest calculation); Ex. R, BLN - 625K Note, ECF No. 1-29, at ECF pp. 3–4.)

Pursuant to the CEMA, "[u]pon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage[,] and the Loan Documents shall have been paid in full." (Ex. P, CEMA 1840, ECF No. 1-27, at ECF p. 17, ¶ 4.4 (Consolidated Note).) The CEMA further provides that the default interest rate is to be calculated from the date of default, and "shall continue to accrue at the Default Rate (including following the entry of a judgment in favor of [Golden Bridge]) until payment [in] full of all sums due under this Note, the Mortgage[,] or any of the Loan Documents," and that the provisions of CPLR § 5004 are "waived and deemed inapplicable." (Ex. P, CEMA 1840, ECF No. 1-27, at ECF p. 17, ¶ 4.4 (Consolidated Note); Aff. of Amounts Due, ECF No. 14-6, ¶ 10.) The BLN similarly provides for accrual of interest at the 24% default rate, including after the entry of judgment, until the note, mortgage, and loan documents are paid in full. (Ex. R, BLN - 625K Note, ECF No. 1-29, at ECF p. 4, ¶ 4.4.) Because the parties' contracts here explicitly provide that default interest survives an entry of judgment in favor of Plaintiff, default interest shall be calculated at the default interest rate of 24% from the date of the default (May 2, 2021) until the judgment is satisfied (or until the date of the foreclosure sale), at the *per diem* rate of **$1,183.33**. *Cf. Banque Nationale De Paris v. 1567 Broadway Ownership Assocs.*, 248 A.D.2d 154, 669 N.Y.S.2d 568 (1998) (noting, in a case where the "loan documents [did] not constitute clear, unambiguous and unequivocal expression that defendant agreed to pay default rate until judgment was satisfied," that the general "rule that statutory rate applies once judgment is entered" was applicable).

While the Court acknowledges that ordinarily, post-judgment interest at the statutory rate is mandatory, "'where there is a clear, unambiguous, and unequivocal expression to pay an interest rate higher than the statutory interest rate until the judgment is satisfied, the contractual interest rate is the proper rate to be applied.'" *E. Sav. Bank, FSB v. McLaughlin*, No. 13-CV-1108 (NGG) (LB), 2014 WL 2440582, at *2 (E.D.N.Y. May 30, 2014) (quoting *Ret. Accts., Inc. v. Pacst Realty, LLC*, 854 N.Y.S.2d 487, 489 (N.Y. App. Div. 2d Dep't 2008)). Accordingly, the statutory post-judgment interest rate "is inapplicable here." *Id.* at *3.

The Court recommends granting Plaintiff (1) interest for the 30 days from April 2, 2021 through May 1, 2021 totaling **$14,791.66**; and (2) default interest (at a rate of 24%) at a ***per diem*** **rate of $1,183.33**, calculated from the date of default (May 2, 2021) through the date of foreclosure and sale.

### C.  Judgment of Foreclosure and Sale and Appointment of Referee

Plaintiff seeks a judgment of foreclosure and sale and appointment of a referee. "A plaintiff is entitled to foreclose on a property if it demonstrates the existence of an obligation secured by a mortgage, and a default on that obligation." *OneWest Bank, N.A. v. Denham*, No. 14-CV-5529 (DRH) (AKT), 2015 WL 5562980, at *14 (E.D.N.Y. Aug. 31, 2015) (quotation marks omitted), *report and recommendation adopted*, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015). Having found that Plaintiff has met its burden regarding the existence of and default on the mortgages here, the Court accordingly recommends appointment of a referee and entry of a judgment of foreclosure and sale, with the proceeds to be applied to the amount owed on Plaintiff's liens. *See id.*; *see also U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Christian*, No. 19-CV-427 (CBA) (RML), 2020 WL 3918566, at *6 (E.D.N.Y. Feb. 25, 2020), *report and recommendation adopted,* 2020 WL 3893015 (E.D.N.Y. July 10, 2020) (collecting cases) ("[C]ourts routinely

appear referees to effectuate the sale of foreclosed properties."). To assist in the selection of a referee, "Plaintiff should be directed to propose the names of three referees to the court, along with a brief description of their qualifications." *Id.*

## CONCLUSION

For the reasons outlined above, the Court recommends entering a default judgment and awarding Plaintiff the following damages: (1) outstanding principal of **$1,775,000**; (2) unpaid interest from April 2, 2021 through May 1, 2021 of **$14,791.66**; and (3) default interest at a *per diem* rate of **$1,183.33**, calculated from the date of default, May 2, 2021, through the date of foreclosure and sale. The Court also recommends entering a judgment of foreclosure and sale and appointing a referee to effect the foreclosure.

Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants by August 14, 2023, and to file proof of service with the Court.

\* \* \* \* \*

This Report and Recommendation will be filed electronically and a copy will be sent by mail to Defendants. Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Ann M. Donnelly at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir.

2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

      **SO ORDERED.**

Dated:  Brooklyn, New York
        August 10, 2023

                                            *Taryn A. Merkl*
                                 TARYN A. MERKL
                                 UNITED STATES MAGISTRATE JUDGE